UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREG E. LINDBERG,

    Plaintiff,

v.                                                    CASE NO. 8:25-cv-897-SDM-NHA

NEIL WEINBERG, et al.,

    Defendants.
_____/

## ORDER

Alleging that a December 2, 2024 *Bloomberg Businessweek* article titled *How A Billionaire's "Baby Project" Ensnared Dozens of Women* contains three false and defamatory statements, Greg Lindberg sues (Doc. 1) Bloomberg, L.P., and three Bloomberg employees, Neil Weinberg, Jackie Davalos, and Sophie Alexander. The complaint asserts a claim for defamation *per se* (Count I), a claim for defamation *per quod* (Count II), a claim for tortious interference of a business relationship (Doc. III), a claim for false light invasion of privacy (Count IV), and a claim for injunctive relief (Count V) based on the allegedly defamatory statements. Bloomberg moves (Doc. 25) to dismiss this action. Also, Weinberg, Davalos, and Alexander move (Doc. 24) to dismiss. Lindberg responds (Docs. 26 and 27) in opposition. Lindberg moves (Doc. 28) for an "emergency preliminary injunction" to stop Bloomberg from publishing an allegedly defamatory podcast based on the article.

Bloomberg's article (Doc. 1-1) details Lindberg's "baby project," an effort to use egg donors and surrogates to enlarge Lindberg's family. The sub-title of the article states (Doc. 1-1 at 1), "Disgraced tycoon Greg Lindberg built a network of egg donors and surrogates. Several say he conned them — and that the US fertility clinics helped him do it." To substantiate the information in the article, the defendants "reviewed independently sourced legal, medical and financial records, and conducted dozens of interviews with [Lindberg's] former employees, clinic workers, ex-girlfriends, egg donors and surrogates." (Doc. 1-1 at 2)

**I. Counts I, II, and V**

Lindberg alleges (Doc. 1 at 9) in Count V that three statements in the article are defamatory (1) that "Lindberg's selection of egg donors was based exclusively on eye color," (2) that "the statement characterizing Lindberg's family planning decisions as 'off' and 'jarring,'" and (3) that "Lindberg 'conned' women into donating eggs to him." The general allegations of the complaint include only allegations of the "eye color" statement and the "family planning" statement.

To succeed on a defamation claim, a plaintiff must establish "(1) publication; (2) falsity; (3) . . . knowledge or reckless disregard as to the falsity . . . ; (4) actual damages; and (5) [that] the statement [is] defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "*Per se* defamatory statements are 'so obviously defamatory' and 'damaging to reputation' that they 'give[ ] rise to an absolute presumption both of malice and damage.'" *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (quoting *Wolfson v. Kirk*, 273 So.2d 774, 776 (Fla. 4th DCA

1973)). "[C]onsidered alone and without innuendo," a written publication constitutes libel *per se* if the statement "(1) [declares] that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Alan*, 604 F. App'x at 865.

Under Section 770.01, Florida Statutes, before a plaintiff sues a "news media" defendant, the plaintiff must give "pre-suit" notice to the author.[1] *Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1275–76 (S.D. Fla. 2019). In an action against a reporter, a plaintiff who gives notice to the publishing corporation and not to the individual reporter fails to satisfy Section 770.01. *Rendon*, 403 F. Supp. 3d at 1275–76. Absent "pre-suit" notice, dismissal is proper. *Rendon*, 403 F. Supp. 3d at 1275–76; *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376, 1377 (Fla. 4th DCA 1997). No allegation appears in the complaint that Lindberg served each defendant with "pre-suit" notice under Section 770.01.

Count I asserts a claim for defamation *per se*. Count I includes no allegation of a statement in the article that is defamatory *per se*. Although Count I includes a conclusory allegation that the "[d]efendants made false and defamatory statements concerning [the] [p]laintiff, both orally and in writing," Count I neither quotes nor describes the allegedly defamatory statements. Also, Count I states the elements of a

---

[1] Section 770.01, Florida Statutes, states, "Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory."

defamation claim, but contains no factual allegations that if true would support a finding of defamation *per se*. Count I fails to state a claim under Florida law for defamation *per se*.

Count II fails to state a claim for defamation *per quod*. Count II neither quotes nor describes the allegedly defamatory statements. Also, Count II alleges no particular "extrinsic evidence" that would "reveal [the statement's] defamatory meaning." The conclusory allegations in Count II fail to state a claim for defamation *per quod*.

Although the complaint puts each word in quotation marks, a review of the article reveals that the article does not contain the statements that Lindberg's family planning decisions were "off" and "jarring," and does not use the word "exclusively" to describe Lindberg's selection of egg donors. Lindberg's complaint fails to "identify[] the allegedly defamatory statements with sufficient particular[ity]." *Brown Jordan Int'l Inc. v. Carmicle*, 2015 WL 6123520, at *10 (S.D. Fla. Oct. 19, 2015), *aff'd*, 846 F.3d 1167 (11th Cir. 2017).

Lindberg argues that the statement (from the article's sub-heading) that "[s]everal [egg donors and surrogates] say [Lindberg] conned them" is not an "opinion" and is provably false. "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been

- 4 -

stated in the publication or assumed to exist by the parties to the communication." *Turner*, 879 F.3d at 1262.

*The American Heritage Dictionary* defines "con" as "[t]o swindle (a victim) by first winning the victim's confidence; dupe." The article states (Doc. 1-1 at 13) that "[s]everal egg donors and at least one surrogate never received the full payment they were promised, according to interviews, contracts and financial records." The article's "conned" statement is supported by factual assertions in the article. The complaint fails to allege which of those factual assertions (that support the "conned" statement) are false.

Though not entirely clear, Lindberg seems to argue that the three statements in the article "convey a false and defamatory impression." Under Florida law, a plaintiff may assert a claim for "the tort of defamation by implication." *Jews For Jesus*, 997 So. 2d at 1108. However, Lindberg's complaint fails to assert a claim for "defamation by implication."

Lindberg's defamation claims suffer from an additional deficiency. The defendants argue, and Lindberg agrees (Doc. 26 at 10), that Lindberg is a "public figure." "Because of the expressive freedom guaranteed by the First Amendment, a defendant may not be held liable for defaming a public figure about a matter of public concern unless he is shown to have acted with actual malice." *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020) (citations omitted). "To plead actual malice" Lindberg "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of

- 5 -

whether it was false . . . .'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

Lindberg argues that the complaint sufficiently alleges "actual malice" for several reasons. First, the complaint alleges that "Bloomberg reporters gained access to Lindberg under false pretenses, misrepresenting the purpose of their interview," and that "[t]his deceptive conduct supports an inference that Bloomberg was not engaged in good-faith journalism but rather in a predetermined attack." Second, Lindberg argues that the defendants "ignored extensive corrective information provided by Lindberg's legal team before publication." Third, the defendants "relied exclusively on anonymous and biased sources while disregarding credible contradictory evidence." Each of Lindberg's arguments is unpersuasive. The defendant's misrepresentations of the purpose of an interview is insufficient to allege "actual malice." Although ignoring "extensive corrective information" given to the defendants could support a finding of "actual malice," the complaint fails to allege what specific information was provided to the defendants. The conclusory allegation that "corrective information" was provided to the defendants is insufficient to allege "actual malice." Similarly, alleging reliance on a biased source is not the same as alleging that the defendants knew or should have known that the biased source's information was false. The complaint fails to sufficiently allege that the defendants had "actual malice."

Because Lindberg fails to state a claim for defamation, Lindberg's claim for injunctive relief also fails. Counts I, II, and V warrant dismissal.

**II. Counts III and IV**

Count III asserts a claim for tortious interference. The complaint alleges that the defendants knowingly and intentionally interfered with Lindberg's "business opportunities and relationships" by "publishing defamatory statements intended to damage [Lindberg's] credibility and to cause breaches of non-disclosure agreements."

The elements of a claim for tortious interference are "(1) the existence of a business relationship . . . under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1255 (S.D. Fla. 2014) (quotations omitted). Lindberg fails to identify the specific business relations with which the defendants interfered. Interference with Lindberg's relation with the public at large is insufficient. *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 461 (Fla. 3d DCA 2023). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement" that the defendants' interference disrupted. *Ozyesilpinar*, 365 So. 3d at 460. Also, the complaint fails to show how the defendant's alleged wrongful inference damaged Lindberg.

The complaint never identifies which defamatory statement the defendants used to tortiously interfere. Also, Florida's "pre-suit" notice statute applies to a tortious interference claim based on an allegedly defamatory statement. *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 357 (Fla. 3d DCA 2020). Because Lindberg

- 7 -

failed to even allege "pre-suit" notice of the defamatory statements that were used to tortiously interfere, the complaint fails to state a claim for tortious interference.

The defendants argue that Florida's "single-action rule" bars Lindberg's tortious interference claim. "In Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So.2d 204, 208 (Fla. 4th DCA 2002) (citation omitted). "When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman*, 22 F. Supp. 3d at 1256 (finding that the rule requires dismissal for "concurrent counts . . . based on the same publication and [the same] underlying facts as the failed defamation count"). Because the complaint fails to specify which defamatory statement caused the interference, consideration of the "single-action rule" is premature.

Lindberg fails to state a claim for tortious interference. Count III warrants dismissal.

Count IV asserts a claim for "false light invasion of privacy." Inexplicably, Count IV cites *Jews for Jesus* to support the assertion that "Florida law recognizes false light invasion of privacy as a distinct cause of action." However, *Jews For Jesus*

"decline[s] to recognize a cause of action for false light invasion of privacy." 997 So. 2d 1098, 1114 (Fla. 2008). Count IV warrants dismissal.

## CONCLUSION

Because the complaint fails to state a claim, Bloomberg's motion (Doc. 25) is **GRANTED**. Counts I, II, III, and V are **DISMISSED WITHOUT PREJUDICE**. Count IV is **DISMISSED WITH PREJUDICE**. Because the complaint fails to state a claim for defamation, the emergency motion (Doc. 28) for a preliminary injunction is **DENIED WITHOUT PREJUDICE**. The motion (Doc. 23) is **DENIED AS MOOT**. No later than **AUGUST 22, 2025**, Lindberg may amend the complaint.

Because this order dismisses each claim against each defendant, the motion (Doc. 24) to dismiss by Weinberg, Davalos, and Alexander is **DENIED AS MOOT**. This order does not determine whether Weinberg, Davalos, and Alexander were properly served. If Lindberg amends the complaint, Weinberg, Davalos, and Alexander may renew the motion to dismiss for improper service.

ORDERED in Tampa, Florida, on August 7, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE